IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

JOHN MORAN,

        Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

        Defendant.

No. C13-1031

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

I.    INTRODUCTION .................................. 2

II.   PROCEDURAL BACKGROUND ...................... 2

III.  PRINCIPLES OF REVIEW ........................... 2

IV.  FACTS ........................................... 4
    A.   Moran's Education and Employment Background .............. 4
    B.   Administrative Hearing ................................ 5
        1.   Moran's Testimony ............................. 5
        2.   Vocational Expert's Testimony .................... 5
    C.   Moran's Medical History .............................. 6

V.    CONCLUSIONS OF LAW ........................... 8
    A.   ALJ's Disability Determination ......................... 8
    B.   Objections Raised By Claimant ........................ 11
        1.   Credibility Determination ....................... 11
        2.   RFC Assessment ............................. 14

VI.  CONCLUSION ................................... 17

VII. ORDER ......................................... 17

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 4) filed by Plaintiff John Moran on October 11, 2013, requesting judicial review of the Social Security Commissioner's decision to deny his applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Moran asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits and SSI benefits. In the alternative, Moran requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On October 11, 2013, Moran filed this action for judicial review. The Commissioner filed an Answer on December 19, 2013. On January 17, 2014, Moran filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that he is not disabled and that he is functionally capable of performing his past relevant work as a labeler; or in the alternative, performing work that exists in significant numbers in the national economy. On March 13, 2014, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On March 23, 2014, Moran filed a reply brief. On November 8, 2013, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

## III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to:

"[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is "something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal."

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th

Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Moran's Education and Employment Background

Moran was born in 1989. He is a high school graduate. Following high school, Moran went to college for about two years. He studied computer technology, and later culinary arts. At the administrative hearing, Moran stated that his culinary arts advisor asked him to drop out because his "condition prevented me from completing all of the course requirements."[1] Specifically, Moran testified that "[t]hey were asking me to have a full-time job, and also I had to stand for about two hours right after eating lunch. And with my condition I was having bathroom issues right after eating, so they -- I couldn't

---

[1] Administrative Record at 32.

4

stand there for as long. And I had to leave the class several times. And I wasn't learning what I was supposed to."[2] Moran's past work history consists of the job of "box labeler."

### B. Administrative Hearing

#### 1. Moran's Testimony

At the administrative hearing, Moran testified that his primary health concerns center around bowel problems, including Crohn's disease. According to Moran, he has multiple bowel movements throughout the day and night causing issues with fatigue, pain, and going out in public. Moran also indicated that standing, sitting, and/or walking for significant amounts of time sometimes negatively impacts his bowel movements. Lastly, Moran stated that stress causes his bowel movements to increase.

#### 2. Vocational Expert's Testimony

At the hearing, the ALJ provided vocational expert Elizabeth Albrecht with a hypothetical for an individual who is:

> capable of performing light work . . . [and] can occasionally climb, balance, stoop, kneel, crouch, and crawl. He should work in a place that has few workplace changes, should have no more than brief and superficial interaction with the public and occasional interaction with coworkers and supervisor, and would need, say, two bathroom break[s] during the workday at unscheduled times each one lasting for 10 [to 15] minutes at a time.

(Administrative Record at 58.) The vocational expert testified that under such limitations, Moran could perform his past relevant work as a box labeler. The ALJ provided the vocational expert with a second hypothetical which was identical to the first hypothetical except that the individual would be limited to sedentary work. The vocational expert testified that under such limitations, Moran would be precluded from performing his past relevant work, but could perform the following jobs: (1) surveillance system monitor (200

---

[2] *Id.* at 33.

positions in Iowa and 17,000 position in the nation), (2) addresser (300 positions in Iowa and 25,000 positions in the nation), and (3) call-out operator (200 positions in Iowa and 16,000 positions in the nation).

### C. Moran's Medical History

On November 10, 2010, Moran met with Heather K. Kessler, PA, regarding Crohn's disease and GERD. Kessler noted that "[a]bout 1-2 times a week he can have up to 7-8 stools. . . . Everyday [his abdominal cramping is] . . . usually rated a 4/10 but it can get to a 7/10."[3] Otherwise, Kessler noted that Moran generally has 3-4 "mostly formed" stools per day. Kessler also noted that Moran complained of significant fatigue. For example, Moran indicated that he needs a twenty minute break after doing simple chores like washing dishes or doing laundry. Upon examination, Kessler diagnosed Moran with fructose intolerance and Crohn's disease. Kessler recommended medication as treatment.

On November 24, 2010, Dr. Laura Griffith, D.O., reviewed Moran's medical records and provided Disability Determination Services ("DDS") with a physical residual functional capacity ("RFC") assessment for Moran. Dr. Griffith determined that Moran could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Griffith also determined that Moran could occasionally climb, balance, stoop, kneel, crouch, and crawl. Dr. Griffith found no manipulative, visual, communicative, or environmental limitations.

On January 17, 2011, Moran was referred by DDS to Dr. Thomas R. Anderegg, Ph.D., for a mental status evaluation. Dr. Anderegg noted that Moran was being treated

---

[3] Administrative Record at 279.

for Crohn's disease and "has stomach cramps on a daily basis as well as multiple bowel movements."[4] Dr. Anderegg further noted that:

> Mr. Moran states that fatigue is one of the symptoms that affects his functioning the most. Despite the fact that he sleeps between nine and ten hours a day, he becomes tired very easily. He spends most of his day sitting at the computer or laying down. Sitting up and moving around leave him exhausted.

(Administrative Record at 295-96.) Upon examination, Dr. Anderegg diagnosed Moran with a single episode of major depression, anxiety disorder, and Crohn's disease. Dr. Anderegg concluded that:

> Mr. Moran is capable of remembering and understanding simple instructions, procedures, and locations. His concentration and attention are adequate to allow him to carry them out reliably. Work pace is in the normal range. He is able to interact appropriately with supervisors, co-workers, and the public. His judgment is intact. He is capable of responding appropriately to changes in the work place.

(Administrative Record at 298.)

On February 9, 2011, Dr. Myrna Tashner, Ed.D., reviewed Moran's medical records and provided DDS with a Psychiatric Review Technique assessment for Moran. Dr. Tashner diagnosed Moran with major depressive disorder (single episode) and anxiety disorder. Dr. Tashner determined that Moran had the following limitations: mild restriction of activities of daily living, no difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace.

On July 5, 2011, Moran met with Dr. David Elliot, M.D., regarding his Crohn's disease. Dr. Elliot noted that Moran reported a "little worse" cramping and 2-5 loose stools per day. Upon examination, Dr. Elliot reaffirmed Moran's diagnosis of Crohn's

---

[4] Administrative Record at 295.

disease, and recommended medication as treatment. On September 7, 2011, Moran met with Dr. Elliot for a follow-up appointment. Moran reported "some" fatigue, muscle, and joint pain. He also reported 1-4 loose bowel movements per day with "increased urgency." Upon examination, Dr. Elliot diagnosed Moran with "probable" active Crohn's disease. Dr. Elliot continued to treat Moran with medication. Moran's next follow-up appointment with Dr. Elliot occurred on January 4, 2012. Dr. Elliot found that Moran's symptoms were "slightly" better. Moran reported less diarrhea and abdominal pain. However, Moran continued to have fatigue requiring daily napping. Moran continued to have 3-4 loose stools per day. Dr. Elliot continued to treat Moran's Crohn's disease with medication. Moran returned to Dr. Elliot on April 18, 2012. At this follow-up appointment, Moran reported feeling "pretty well." He was having only 1-2 bowel movements per day. Dr. Elliot found that Moran had Crohn's disease with "minimal symptoms."[5] Dr. Elliot continued to treat Moran with medication.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Moran is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the

---

[5] On the same date, Moran also met with his primary care doctor. Upon examination, his primary care doctor indicated that Moran's Crohn's disease was in remission. *See* Administrative Record at 428.

> impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could

perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Moran had not engaged in substantial gainful activity since June 1, 2010. At the second step, the ALJ concluded from the medical evidence that Moran has the following severe impairments: obesity and Crohn's disease. At the third step, the ALJ found that Moran did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Moran's RFC as follows:

> [Moran] has the residual functional capacity to perform light work . . . except: he can only occasionally climb, balance, stoop, kneel, crouch, and crawl. He should work in a place that has few workplace changes. He should have no more than brief and superficial interaction with the public and occasional interaction with supervisors and coworkers. He would need two bathroom breaks during the workday at unscheduled times, each one lasting for 10-15 minutes at a time.

(Administrative Record at 16.) Also at the fourth step, the ALJ determined that Moran could perform his past relevant work as a labeler. In the alternative, at the fifth step, the ALJ determined that based on his age, education, previous work experience, and RFC, Moran could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Moran was not disabled.

## B. Objections Raised By Claimant

Moran argues that the ALJ erred in two respects. First, Moran argues that the ALJ failed to properly evaluate his subjective allegations of disability. Second, Moran argues that the ALJ's RFC determination is not supported by substantial evidence in the record.

### 1. Credibility Determination

Moran argues that the ALJ failed to properly evaluate his subjective allegations of disability. Moran maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Moran's testimony, and properly evaluated the credibility of his subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the

objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In his decision, the ALJ determined that:

> After careful consideration of the evidence, the undersigned finds that [Moran's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Moran's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

12

> [Moran] experiences some symptoms and limitations; however, the record does not fully support the severity of [his] allegations. As discussed in full detail above, the objective medical findings of record fail to support [Moran's] allegations of disabling symptoms and limitations.[6] [Moran's] diagnosed obesity suggests that he does not have bowel movements with the frequency that he alleged. While, [he] reported experiencing varying bowel movement symptoms, treatment notes generally indicated that his symptoms were adequately controlled on prescribed medications. Specifically, medical records with his treating gastrointestinal doctor and primary care physician indicated that [Moran's] GERD was controlled and his Crohn's disease was doing well on medications. Contrary to [his] testimony, [Moran's] primary care physician found that his Crohn's disease was in remission. Additionally, during his most recent evaluation Dr. Elliot was of the impression that [Moran] had only "minimal symptoms" on his medications. Notably, inconsistent with his allegations and testimony, [Moran] informed his doctor that he was feeling well on his current medications.
>
> In addition, [Moran] has described daily activities that are not limited to the extent one would expect given his allegations of disabling Crohn's disease. Specifically, [Moran] reported being able to prepare meals, noting that these would take him anywhere from five minutes to two hours, noting only that he needed to avoid preparing certain foods. He reported doing household chores including cleaning the living area, laundry, and dishes, noting some difficulties going up and down stairs secondary to fatigue. He further reported driving a car and going shopping in stores without any reported difficulties.

(Administrative Record at 20-21.)

It is clear from the ALJ's decision that he thoroughly considered and discussed Moran's treatment history, medical history, functional restrictions, effectiveness of

---

[6] *See* Administrative Record at 17-20 (providing thorough discussion of Moran's medical history).

13

medications, and activities of daily living in making his credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Moran's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Moran's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2. *RFC Assessment*

Moran argues that the ALJ's RFC assessment is flawed and not supported by substantial evidence. Specifically, Moran argues that the ALJ failed to fully appreciate and properly consider the "waxing and waning" nature of his Crohn's disease when determining his RFC. Moran concludes that this matter should be remanded for further consideration of the effects of his limitations from his Crohn's disease, especially as they pertain to his RFC.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment

must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In determining Moran's RFC, the ALJ thoroughly addressed and considered his medical history, particularly his Crohn's disease.[7] For example in September 2011, the ALJ found it significant that "treatment notes indicated that [Moran's] GERD was under

---

[7] *See* Administrative Record at 17-20 (providing a thorough discussion of Moran's overall medical history and difficulties with Crohn's disease).

15

control and his Crohn's disease was doing well."[8] Similarly, the ALJ noted that in April 2012, Moran's primary care physician found his Crohn's disease to be in remission.[9] Moreover, with regard to Dr. Elliot's most recent treatment notes, the ALJ found that "[Moran] reported feeling pretty well on medications. Dr. Elliot was of the impression that [Moran] was having minimal symptoms on his prescribed medications."[10] The ALJ concluded that "[i]n sum, the above residual functional capacity assessment is supported by the objective medical evidence contained in the record. . . . [Moran] does experience some symptoms and limitations but only to the extent described in the residual functional capacity above."[11]

Therefore, having reviewed the entire record, the Court finds that the ALJ properly considered Moran's medical records, observations of treating physicians, and Moran's own description of his limitations in making the ALJ's RFC assessment for Moran.[12] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618. The Court concludes that Moran's assertion that the ALJ's RFC assessment is flawed and not supported by substantial evidence is without merit.

---

[8] *Id.* at 20.

[9] *Id.*

[10] *Id.* Additionally, the Court points out that Dr. Elliot is specialist treating source.

[11] *Id.* at 21.

[12] *See* Administrative Record at 17-21 (providing thorough discussion of the relevant evidence for making a proper RFC determination).

## VI. CONCLUSION

The Court finds that the ALJ properly determined Moran's credibility with regard to his subjective complaints of disability. The Court also finds that the ALJ considered the medical evidence as a whole, and made a proper RFC determination based on a fully and fairly developed record. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;
2. Plaintiff's Complaint (docket number 4) is **DISMISSED** with prejudice; and
3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 9th day of July, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA